UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
BILL WISSER,

Plaintiff,

-against-

1220 COLLINS AVENUE, INC. D/B/A THE WEBSTER,

Defendant.
---------------------------------------------------------------------X

Index No. 1:19-cv-00349-AT

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFF'S MOTION FOR DEFAULT**

**TUTTLE YICK LLP**
Gregory O. Tuttle
220 East 42nd Street, 29th Floor
New York, New York 10017
(646) 833-0300
*Attorneys for Defendant 1220 Collins Avenue, Inc. d/b/a The Webster*

**Table of Contents**

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 6

I. THE WEBSTER'S DEFAULT WAS NOT WILLFUL .......... 7

II. THE WEBSTER HAS SEVERAL MERITORIOUS DEFENSES .......... 8

A. Plaintiff Has Not Shown Valid Ownership of the Alleged Copyright .......... 8

B. The Complaint is Untimely .......... 9

C. Any Infringement is *De Minimis* .......... 9

III. PLAINTIFF HAS SUFFERED NO PREJUDICE .......... 10

IV. IF DEFAULT IS ENTERED, DAMAGES SHOULD BE $750 .......... 11

CONCLUSION .......... 12

**Cases**

*Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57 (2d Cir. 1996) .................................. 2, 8

*Argus Research Grp., Inc. v. Argus Sec., Inc.*, 204 F.Supp.2d 529 (E.D.N.Y. 2002) .................. 10

*Brown v. DeFilippis*, 695 F. Supp. 1528 (S.D.N.Y. 1988) ....................................................... 7

*Bryant v. Media Right Prods.*, 603 F.3d 135 (2d Cir. 2010) ................................................. 11,12

*Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983) ............................................................................ 10

*Downs v. Yeshiva World News, LLC*, No. 18-CV-0250 (LDH) (JO), 2019 WL 1261406, (S.D.N.Y. Feb. 1, 2019) ........................................................................................................ 12

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) .................................................... 10

*Fischer v. Forrest*, No. 14 CIV. 1307 PAE, 2014 WL 2717937 (S.D.N.Y. June 16, 2014) .......... 7

*Gayle v. Home Box Office, Inc.*, No. 17-CV-5867 (JMF), 2018 WL 2059657 (S.D.N.Y. May 1, 2018) ........................................................................................................ 10

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625 (S.D.N.Y. 2008) ........... 10

*McDermott v. Monday Monday, LLC*, No. 17CV9230 (DLC), 2018 WL 5312903 (S.D.N.Y. Oct. 26, 2018) ........................................................................................................ 3

*Meehan v. Snow*, 652 F.2d 274 (2d Cir. 1981) ............................................................................ 7

*Minden Pictures, Inc. v. Buzzfeed, Inc.*, No. 18 CIV. 2438 (DAB), 2019 WL 3315186 (S.D.N.Y. Feb. 21, 2019) ........................................................................................................ 9

*Mordant v. Citinsider LLC*, No. 18-CV-9054 (RA), 2019 WL 3288391 (S.D.N.Y. July 22, 2019) ........................................................................................................ 11-12

*Ostrolenk Faber LLP v. Lagassey*, No. 18-CV-1533 (RA), 2019 WL 2433887 (S.D.N.Y. June 11, 2019) ........................................................................................................ 7

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014) ............................................... 9

*Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70 (2d Cir. 1997) .......................................... 9

*Sandoval v. New Line Cinema Corp.*, 147 F.3d 215 (2d Cir. 1998) ............................................. 10

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012) ............................................... 7

**Statutes**

17 U.S.C. § 504(c)(1) ........................................................................ 2, 11

17 U.S.C. § 507(b) ........................................................................ 9

Defendant 1220 Collins Avenue, Inc., d/b/a The Webster ("**The Webster**" or "**Defendant**"), through its undersigned counsel, Tuttle Yick LLP, respectfully submits this Memorandum of Law in opposition to Plaintiff Bill Wisser's ("**Wisser**" or "**Plaintiff**") motion for entry of default pursuant to Federal Rule of Civil Procedure 55(b).

**PRELIMINARY STATEMENT**[1]

The Webster is a multi-brand high-end fashion retailer that operates brick-and-mortar locations in Florida, Texas, California and New York, as well as an online store. Plaintiff — a serial litigant that has filed 12 copyright cases in this district alone in the last two years — alleges that The Webster willfully infringed his registered copyright by posting a single thumbnail image on a page of its website long ago deactivated. Even though Wisser's action is both untimely and meritless, Plaintiff now moves for a default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and seeks $30,000 in statutory damages and over $3000 in attorneys' fees.

Plaintiff's motion should be denied for the following reasons:

First, Defendant's failure to assert a timely answer in this case was not "willful." Rather, because the initial filing papers included an image from The Webster's old website with which he was not familiar, The Webster's CEO believed the Complaint was an attempted scam, not a real lawsuit. Upon receipt of Plaintiff's motion for default and the Court's order to show cause, however, The Webster promptly alerted the undersigned counsel, who immediately reached out to Plaintiff to attempt to resolve. Even if it could be characterized as negligent, The Webster's brief

[1] Emphasis has been added to, and internal quotations, brackets and citations omitted from, quoted material in this brief, except as indicated. Citations to "¶__" refer to paragraphs of the Complaint, annexed as Exhibit B of the April 26, 2019 Declaration of Richard Leibowitz ("**Leibowitz Decl.**"). Citations to "**Malecaze Decl.**" and "**Tuttle Decl.**" refer to the August 9, 2019 Declarations of Laurent Malecaze and Gregory O. Tuttle, Esq. respectively.

delay falls far short of willful, deliberate or bad faith conduct required in the Second Circuit. *See Am. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996).

Second, Defendant has multiple meritorious defenses. Plaintiff fails to put forward evidence that Plaintiff either registered the copyright or even owns the copyright at all. In all events, Plaintiff's copyright claim based on a photograph published in 2013 is barred by the applicable three-year statute of limitations. Finally, even if Wisser owns the copyright (he may or may not) and this action were timely (it isn't) any infringement was *de minimis*, as it consisted, at most, of the temporary publication of a thumbnail image on an obscure link of The Webster's website that had been deactivated over three years ago.

Third, Plaintiff would suffer no prejudice in the absence of a default. At most, this case will be delayed several months, most of which is attributable to Plaintiff's failure to effect proper service of its default papers in accordance with this Court's orders.

Finally, even if a default is granted, Plaintiff's request for $30,000 in statutory damages and over $3000 in attorneys' fees is excessive and unreasonable. Plaintiff has failed to make any showing as to the factors weighed by courts when awarding statutory damages under 17 U.S.C. § 504(c)(1). But those factors compel a finding that only the minimum statutory damages — $750 — is appropriate, and no attorneys' fees should be awarded.

Plaintiff's application for a default judgment should be denied, the Clerk of Court's entry of default vacated, and Defendant should be permitted to assert a responsive pleading within a reasonable time.

## FACTUAL BACKGROUND

**Parties.** The Webster is a multi-brand retailer. It operates store locations in four states, including New York, and an online store, www.thewebster.us. Malecaze Decl. ¶4. Contrary to

Plaintiff's counsel's sworn declaration, The Webster is not "in the publishing industry" and does not have experience in copyright law. *Id.* ¶5; *see* Leibowitz Decl. ¶16 (incorrectly stating that "Defendant operates in the publishing industry and is therefore presumed to have knowledge of copyright law").[2] Wisser alleges he is a professional photographer. ¶5. He has filed at least seventeen copyright infringement claims in the federal courts.[3]

**The Photograph**. Wisser alleges that he took, and is the author of, a night time photograph of Club Deuce in Miami, Florida, attached as Exhibit A of the Complaint (the "**Photograph**").




[2] Counsel's misstatement is likely the result of confusion with one of the countless copyright cases his office has filed in this District, most of which ***are*** against publishing companies. As Judge Cote noted in October 2018, plaintiff's counsel has filed "over 700 cases" in two years, generating "an astonishing volume of filings coupled with an astonishing rate of voluntary dismissals and quick settlements," and "it is undisputable that [counsel] is a copyright troll." *McDermott v. Monday Monday, LLC*, No. 17CV9230 (DLC), 2018 WL 5312903, at *2-3 (S.D.N.Y. Oct. 26, 2018) (listing 14 cases as examples of litigation misconduct, questionable tactics, misstatements or frivolous filings by counsel).

[3] *Wisser v. Step Forward*, 04-cv-22145 (S.D.Fl.); *Wisser v. Morris Communications Company*, LLC, 18-cv-00150 (S.D.Ga.); *Wisser v. The Institute of Contemporary Art, Inc.*, 19-cv-10201 (D. Mass.); *Wisser v. Zagat*, 17-cv-04213 (S.D.N.Y.); *Wisser v. Forbes Media LLC*,17-cv-07212 (S.D.N.Y.); *Wisser v. Resy Network, Inc.*, 17-cv-07491 (S.D.N.Y.); *Wisser v. Vox Media, Inc.*, 18-cv-01349 (S.D.N.Y.); *Wisser v. Morris Communications Company, LLC*, 18-cv-05262 (S.D.N.Y.); *Wisser v. The Infatuation Inc.*, 18-cv-07417 (S.D.N.Y.); *Wisser v. Art Media Holdings, LLC*, 18-cv-08227 (S.D.N.Y.); *Wisser v. 1220 Collins Avenue Inc. d/b/a The Webster*,19-cv-00349 (S.D.N.Y.); *Wisser v. Vox Media, Inc.*, 19-cv-01445 (S.D.N.Y.); *Wisser v. Artistic Frame Corp.*,19-cv-02508 (S.D.N.Y.); *Wisser v. Sixty Hotels LLC*, 19-cv-03365 (S.D.N.Y.); *Wisser v. Goop Inc.*, 19-cv-03733 (S.D.N.Y.); *Wisser v. Resident Publications Inc.*, 19-cv-04061 (S.D.N.Y.); *Wisser v. The Infatuation Inc.*, 19-cv-07034 (S.D.N.Y.).

Wisser claims that the Photograph was registered with the United States Copyright Office under registration number VAu 525-476. Complaint ¶9; *see generally* Leibowitz Decl. Upon a search of the United States Copyright Database, that registration number indicates that Wisser registered a "collection" of photographs from a June and early July 2001 collection. Tuttle Decl. ¶6 Ex. 1. It is unclear whether the Photograph is part of this "collection," and Plaintiff has not provided this information. Tuttle Decl. ¶6.

**The Webster's Website and Allegedly Infringing Page**. Along with its physical locations, The Webster operates an online store at www.thewebster.us (the "**Website**"). Malecaze ¶4. **Beginning on or about July 11, 2013**, the website included a page with the URL www.thewebster.us/pow/phil-oh (the "**Page**"), as a part of a weekly feature on different personalities in fashion, which featured the street-style photographer and blogger Phil Oh. *Id.* ¶16. The Page also had several images, including a small, angled, thumbnail image that appears to resemble the Photograph, which takes up a very small fraction of the Page:



Complaint Ex. B. The Webster does not know that Mr. Wisser, or anyone else, had any rights to Photograph. Malecaze Decl. ¶18. According to The Webster's internal analytics data, the Page received vanishingly miniscule traffic: specifically, less than 150 unique pageviews — many of which were members of The Webster's technical team in taking down the Page — over the entirety of its existence ***out of over 12 million unique pageviews of the Website***. Malecaze ¶21 & Ex. 1. The Page generated zero income. *Id.* All links to the Page existing in The Website were removed in March 2016. Malecaze ¶19. Through an oversite, the direct URL to the Page was still accessible for several. *Id*. ¶20. But because all links to it had been removed, the Page could only be accessed in the unlikely event that a web user knew the entire URL address and wanted to view the Page. In January 2019, once this oversight was discovered, the URL itself was also taken down. *Id.*

**This Lawsuit**. On January 13, 2019 — nearly six years after the Photograph was placed on the Page, and nearly three years after all links to the Page had been removed from the Website — Plaintiff filed the Complaint. The Complaint alleges that by publishing the Photograph on its Website, The Webster infringed Wisser's copyright.

A copy of the Summons and Complaint was served on The Webster on January 15, 2019, upon Amanda Santiago, Human Resources/Payroll Specialist for the Webster. Leibowitz ¶6; Dkt. No. 10. However, when the Summons and Complaint was passed up the chain at The Webster, it was mistakenly unaddressed. Specifically, The Webster's CEO, Laurent Malecaze, observed that the Complaint contained pictures of a website he did not recognize; because it included an old image from the Website that had long been taken down. Malecaze ¶9. Malecaze, a French national, who recently moved to the United States and joined The Webster within the past four years, is also unfamiliar with U.S. litigation process. *Id.* ¶8. Because the Complaint did not even

include a photograph from the functional Website, and earnestly believing that the Complaint was a phishing scam or extortion attempt, Malecaze did not forward the Complaint to counsel. Malecaze ¶9.

Plaintiff sought a proposed Clerk's certificate of default on April 11, 2019, which was entered on April 12, 2019. Dkt. Nos. 13, 16. Plaintiff sought an extension of time to file a default motion on April 12, 2019, which was granted, and filed this motion by order to show cause on April 26, 2019, scheduled for a hearing on June 3, 2019. Dkt. No. 22. On May 31, 2019, Plaintiff sought another adjournment of its motion because "due to administrative oversight," Plaintiff failed to serve his motion papers on Defendant as ordered by the Court. Dkt No. 23. This Court granted Plaintiff's application, but required that Plaintiff file proof of service no later than June 14, 2019, or the case would be dismissed for failure to prosecute. Dkt. No. 25. When Plaintiff failed again to timely effect service and follow Court deadlines, on June 28, 2019 the Court adjourned the default motion *sine die*, and required Plaintiff to address why the matter should not be dismissed for failure to prosecute. Dkt. No. 26. Finally, Plaintiff filed an affidavit of service showing service on June 28, 2019 of the default papers, (Dkt. No. 27), and the Court reinstated the default motion. Dkt. No. 29.

After receiving the default papers for the first time on June 28, 2019, The Webster immediately contacted outside counsel. Malecaze Decl. ¶13. Once the Court determined that the lawsuit would not be dismissed for failure to prosecute (Dkt. No. 29), counsel immediately reached to Plaintiff to attempt to resolve and gather information about the alleged infringement. Tuttle Decl. ¶4. As that was unsuccessful, Defendant now responds to the default motion.

## ARGUMENT

"In determining whether a default judgment should be entered under Rule 55(b)(2), courts are guided by the same factors which apply to a motion to set aside entry of a default."

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 612 (S.D.N.Y. 2012). These include: "(1) whether the default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Id. See also Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). Because defaults, rather than a determination on the merits, are disfavored, courts insist that the "extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan*, 652 F.2d at 277. Accordingly, "[a] a court should resolve all doubts in favor of a determination on the merits . . . and liberally grant motion to vacate default judgments so that trial on the merits may be had and justice may be done." *Brown v. DeFilippis*, 695 F. Supp. 1528, 1530 (S.D.N.Y. 1988).

## I. THE WEBSTER'S DEFAULT WAS NOT WILLFUL

"Willfulness," in the context of a default, "refer[s] to conduct that is more than merely negligent or careless." *Fischer v. Forrest*, No. 14 CIV. 1307 PAE, 2014 WL 2717937, at *3 (S.D.N.Y. June 16, 2014). Rather, a finding of willfulness is only appropriate where "there is evidence of bad faith or . . . egregious or deliberate conduct." *Ostrolenk Faber LLP v. Lagassey*, No. 18-CV-1533 (RA), 2019 WL 2433887, at *2 (S.D.N.Y. June 11, 2019). "Even gross negligence does not lead to a finding of willfulness." *Fischer v. Forrest*, 2014 WL 2717937, at *3. *See also Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (excusing failure to answer complaint, where conduct was "grossly negligent" but "not willful, deliberate, or evidence of bad faith").

There was no egregious or deliberate conduct here. Upon service of the Complaint on The Webster's human resources representative in Florida, the files were eventually passed up the chain to Laurent Malecaze, The Webster's CEO and French national. Malecaze ¶¶6-8. Malecaze quickly reviewed the Complaint and saw an alleged picture of The Webster's website: the Page.

*Id.* ¶9. Because all links to the Page had been down for nearly three years, and the picture of the Page was from The Webster's old website design, Mr. Malecaze believed the documents were fraudulent, and potentially a phishing scam or extortion attempt. *Id.* But once Mr. Malecaze received this Court's order to show cause, The Webster immediately forwarded it to counsel, who promptly reached out to Plaintiff's counsel in an attempt to resolve this case without having to address this motion. Malecaze ¶13. The Webster's conduct and rapid attempt to address the default belays any indication of misconduct required to show willfulness.

## II. THE WEBSTER HAS SEVERAL MERITORIOUS DEFENSES

To establish a meritorious defense for the purposes of opposing a default, the defense need not be dispositive, or even "persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, a defense is meritorious if it "is good law so as to give the factfinder *some* determination to make." *Id.* The Webster easily clears this burden.

### A. Plaintiff Has Not Shown Valid Ownership of the Alleged Copyright

As a threshold issue, it is not clear (especially without any discovery) that Plaintiff actually owns the copyright to the Photograph. Aside from the Complaint, Plaintiff offers no actual evidence of his ownership. And in the Complaint, Plaintiff merely asserts that the Copyright is registered and gives the registration number. Complaint ¶9. Plaintiff offers nothing more in support of this motion other than an attorney declaration with no substantive information. While searching for the registration number included in the Complaint indicates that Wisser did, in 2001, register a collection of photographs with the U.S. Copyright Office, (Tuttle Decl. Ex. 1), Plaintiff has failed to provide information to either this Court or to Defendant to verify that the collection actually included the Photograph. Accordingly, Plaintiff's right to statutory damages — or even ownership right in the copyright itself — is dubious.

**B. <u>The Complaint is Untimely</u>**

In any event, Plaintiff's claim is barred by the applicable three-year statute of limitations. *See* 17 U.S.C. § 507(b) (civil actions for copyright infringement must be "commenced within three years after the claim accrued"). The Second Circuit applies the "discovery rule," to copyright actions, which means that the claim accrues when the plaintiff "discovers, or with due diligence should have discovered, the infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014). Here, the Photograph was published on the Page in 2013, well over <u>six years ago</u>. And Wisser either did or should have, with reasonable diligence, discovered this within the statutory time period. *See, e.g., Minden Pictures, Inc. v. Buzzfeed, Inc.*, No. 18 CIV. 2438 (DAB), 2019 WL 3315186, at *2–4 (S.D.N.Y. Feb. 21, 2019) (granting motion to dismiss infringement claim as untimely where plaintiff was a "seasoned litigator," well-versed in copyright claims, having filed dozes of copyright infringement claims, and therefore should have discovered photographs had been used on a website). Just like in *Minden Pictures*, Wisser is a seasoned litigant with vast experience in copyright law. Indeed, Wisser was able to identify the Photograph on the Page even ***after all links to the Page had been taken down from the Website for years***. Without being able to access the page from the Website directly, Wisser must have employed sophisticated technology to find the Photograph. Surely Wisser could and should have identified the Photograph within the limitations period. Wisser's claim is thus untimely.

**C. <u>Any Infringement is *De Minimis*</u>**

Finally, the Complaint is meritless because the alleged infringement is *de minimis*. Copying will not be actionable when it involves "a technical violation of a right so trivial that the law will not impose legal consequences." *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997). In making this determination, courts typically focus on "extent to which the

copyrighted work is copied in the allegedly infringing work, with a work's observability being paramount." *Gayle v. Home Box Office, Inc.*, No. 17-CV-5867 (JMF), 2018 WL 2059657, at *2 (S.D.N.Y. May 1, 2018). "Observability turns on the length of time the copyrighted work is observable as well as factors such as focus, lighting, camera angles, and prominence." *Id.* at *2 (dismissing complaint; copying photograph and placing in film was *de minimis* where image was fleeting); *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 634 (S.D.N.Y. 2008) (dismissing a copyright claim as de minimis even though the copied work was "undoubtedly ... chosen by the production staff because it fit in with the 'sporty' theme of the background in the scene"); *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 218 (2d Cir. 1998) (copying *de minimis* where photographs used in film were filmed at a distance and out of focus such that typical viewer would not notice).

Here, assuming Plaintiff is correct, a tiny, askew version of the Photograph was published on an obscure, temporary page of the Website until all links to it were removed in 2016. Less than 150 people viewed the Page—many of which were The Webster's IT staff in connection with publishing and taking it down. Malecaze Ex. 1. As in *Gayle*, *Gottlieb* and *Sandoval*, the Page's temporary display of the Photograph was *de minimis*, and therefore not actionable.

## III. Plaintiff Has Suffered No Prejudice

Plaintiff suffered no prejudice by the brief delay associated with The Webster's untimely answer. *See, e.g.*, *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (delay insufficient to establish prejudice, delay must "result in the loss of evidence"); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) (1 year delay insufficient to establish prejudice); *Argus Research Grp., Inc. v. Argus Sec., Inc.*, 204 F.Supp.2d 529, 532 (E.D.N.Y. 2002) (3-year delay, without more, insufficient to establish prejudice). Moreover, any delay to the resolution of this claim was exacerbated by Plaintiff's own request for an extension and then subsequent failure to follow this

Court's order to serve default papers and meet the Court's deadlines. Indeed, this Court had to require Plaintiff to show cause why the case should not be dismissed for failure to prosecute. Dkt. No. 26.

## IV. If Default is Entered, Damages Should be $750

If this Court were to hold Defendant in default, it should award the minimum statutory damages of $750. Under the Copyright Act, a copyright owner may elect to recover "an award of statutory damages for all infringements involved in the action . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). In applying its "wide discretion" to determine the appropriate amount of a statutory damages award, a district court considers the following factors: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties. *Bryant v. Media Right Prods.*, 603 F.3d 135, 143–44 (2d Cir. 2010). Here, Plaintiff failed to offer any showing as to any single one of these factors, except Plaintiff's false assertion (likely lifted from another case) that The Webster is "in the publishing business" and "is therefore presumed to have knowledge of the copyright law." Leibowitz Decl. ¶16. In other words, Plaintiff's only assertion relevant to a damages determination is demonstrably false.

To the contrary, The Webster's use of the Photograph was neither willful, nor remotely lucrative. The Page, which included a distorted angle of a tiny thumbnail version of the Photograph, derived no revenue and was hardly visited before being taken down nearly three years ago. Moreover, The Webster is not in the publishing business and has little experience in copyright law. Under these circumstances, the Court should exercise its discretion to award the minimum statutory damages. *See, e.g.*, *Mordant v. Citinsider LLC*, No. 18-CV-9054 (RA), 2019 WL

3288391, at *3 (S.D.N.Y. July 22, 2019) (awarding only $1000 in statutory damages in nearly identical case, except that court found infringement *to be willful* because, unlike here, infringing photograph was not taken down even after defendant received notice of action); *Downs v. Yeshiva World News, LLC*, No. 18-CV-0250 (LDH) (JO), 2019 WL 1261406, at *3 (S.D.N.Y. Feb. 1, 2019) (recommending statutory damages award of $750 per infringed work of copying online photographs, where Plaintiff had "adduced no evidence that he suffered any actual damages," even where, unlike The Webster, defendant was in the publishing business).

Nor should this court award attorneys' fees under Section 505 of the Copyright Act. "When determining whether to award attorneys fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant v. Media Right Prods. Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). But "objective unreasonableness [] should be given substantial weight." *Id.* As set forth above, Defendant's defenses are meritorious and therefore not unreasonable, and its infringement not willful. Moreover, any deterrence can be adequately achieved by The Webster's incurrence of its own attorney's fees.

## **CONCLUSION**

Based on the foregoing, The Webster respectfully requests that this Court (a) deny Plaintiff's motion for default, and (b) vacate the Clerk's entry of default; and (c) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 12, 2019

Respectfully submitted,

TUTTLE YICK LLP

By:____________________

Gregory O. Tuttle
220 East 42nd Street, 29th Floor
New York, New York 10017
(646) 833-0300

*Attorneys for Defendant*
*1220 Collins Avenue, Inc. d/b/a The Webster*